# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

---

| | |
|---|---|
| **EVELYN CARD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16-cv-2264-tmp |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| Defendant. | ) |

---

## ORDER REMANDING CASE PURSUANT TO 42 U.S.C. § 405(g)

---

Before the court is plaintiff Evelyn Card's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq*. The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 10.) For the following reasons, the Commissioner's decision is reversed and the action is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## I. FINDINGS OF FACT

Card initially applied for supplemental security income on November 27, 2012. (R. 161-66.) Card's application was denied

---

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

both at the initial stage and upon reconsideration. (R. 112-15, 124-25.) Card appealed, and an Administrative Law Judge ("ALJ") subsequently held an administrative hearing. (R. 36-55.) The ALJ found that Card had the following severe impairments: migraine headaches, obesity, asthma, affective mood disorder, and anxiety disorder. (R. 22.) However, the ALJ found that Card did not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments contained within 20 C.F.R. part 404, subpart P, appendix 1. (R. 24.) The ALJ determined that Card retained the residual functional capacity

> to lift and/or carry twenty pounds occasionally, ten pounds frequently and to stand, walk and/or sit six hours in an eight-hour workday, not requiring concentrated exposure to pulmonary irritants and temperature extremes. From a mental standpoint, she could understand and remember simple and low-level tasks with customary breaks. She could interact appropriately with supervisors and coworkers and interact infrequently with the general public. Finally, she could adapt to infrequent changes in a routine setting.

(R. 26.) Specifically regarding Card's non-exertional limitations, the ALJ failed to "find any impairment of such severity as would preclude the claimant from performing a wide range of unskilled and low-level detailed light work activity on a sustained basis." (R. 27.) To support this conclusion, the ALJ relied primarily upon Card's testimony regarding her wide range of daily activities, which he asserted suggested that her non-exertional limitations would not "significantly restrict" her range of available work.

For example, the ALJ noted that:

> She reported that she washes dishes twice a day, cleans the kitchen and bathroom once a week and does laundry weekly. She cooks "a lot." She drives her mother to doctor appointments and runs errands. She does the grocery shopping once a week and takes care of her own finances, and the finances of her mother. She is the caregiver for her mother, and she stated that the biggest reason she could not work was because she was taking care of her mother.

(R. 27.) The ALJ noted that caregiving requires a degree of lifting, carrying, standing, walking, pushing, pulling, bending, twisting, reaching, and handling. (Id.) Furthermore, caregivers are required to make decisions, get along with others, and follow simple instructions. (Id.) The ALJ also considered a consultative psychological evaluation conducted by R. Scott Beebe, Ph. D., in 2013. Dr. Beebe noted that Card had mild to moderate limitations in her ability to understand, remember, maintain concentration, persistence, and pace, mild limitations in her ability to maintain social interaction, and moderate limitations in adaptability skills. (R. 24.) Dr. Beebe also noted that Card's below-average ability might interfere with her ability to hold a non-physical office/desk job. (Id.) The ALJ found that given her limitations Card was unable to perform any past relevant work as a transporter/automobile rental clerk. (R. 28.)

At Step Five, the ALJ found that, considering Card's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she could

perform.  (R. 29.)  Significantly, the ALJ determined that "the additional limitations have little or no effect on the occupational base of unskilled light work," and thus relied primarily upon the Medical-Vocational Guidelines in reaching his determination.  (Id.) The ALJ further noted that several jobs were within Card's capacity, including housekeeper, mail clerk, and production assembly.  (Id.)  As part of this determination, it appears that the ALJ relied upon the Social Security Administration ("SSA") Digital Library's "Occubrowse" database.  (Id.)  The ALJ thus determined that Card was not disabled.  (Id.) On March 22, 2016, the SSA's Appeal's Council denied Card's request for review.  (R. 1.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  (Id.)

Card filed the instant action on April 21, 2016.  (ECF No. 1.) Card argues that she has non-exertional impairments that significantly limit her ability to perform the full range of light work and that the ALJ's reliance on the Medical-Vocational Guidelines was therefore inappropriate.  Card further asserts that the ALJ's use of the "SSA Digital Library" cannot cure the failure to obtain Vocational Expert ("VE") testimony because the SSA Digital Library information was never added to the administrative record and Card was not given a chance to respond to it, as required.  (Id. at 2.)  Thus, Card requests that this court remand the case for further findings at Step Five.  (Id.)

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir.

-5-

1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B. The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See

20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C. Whether the ALJ's Reliance on the Medical-Vocational Guidelines was Appropriate

Card first argues that the ALJ's reliance on the Medical-Vocational Guidelines, or "Grids," see 20 C.F.R. Pt. 404, Subpt. P, App. 2, at Step Five was inappropriate because Card suffers from both exertional and non-exertional impairments that erode her ability to work at the given exertional level. (ECF No. 11 at 7-8.) Card contends that the ALJ should have obtained VE testimony or some other vocational resource to determine whether she could perform any jobs that exist in significant numbers in the national economy. (Id.) The government's brief in support of the Commissioner's decision cites to Social Security Ruling 85-15 as reliable evidence that the environmental and work-change limitations do not erode the occupational basis of unskilled light work, and 20 C.F.R. 404 Subpt. P, App. 2, 200.00(i) as reliable evidence that the limitation to infrequent interaction with the public does not restrict the jobs contemplated by the Grids. (Id. at 7-8.)

Generally, "where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the Grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform."[2]

---

[2] Exertional limitations are limitations on a person's ability to meet the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling at the level required by the level of work at issue. 20 C.F.R § 404.1569a(b). Non-

Jordan v. Comm'r of Soc. Sec., 548 F.3d 417, 424 (6th Cir. 2008) (citing Burton v. Sec'y of Health & Human Servs., 893 F.2d 821, 822 (6th Cir. 1990)). As explained in Jordan, 548 F.3d at 423-24:

> SSR 85-15 focuses on claimants with mental impairments and explicitly states that it applies to claimants with solely nonexertional impairments. 1985 SSR LEXIS 20, at *1 (1985). Because Jordan also has exertional limitations, the ALJ should have instead applied SSR 83-14. . . . .
>
> . . .
>
> We have held that the SSA may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level. Abbott v. Sullivan, 905 F.2d at 926-27; Damron v. Sec'y of Health and Human Servs., 778 F.2d 279, 282 (6th Cir. 1985). Normally, where a claimant suffers from an impairment limiting only her strength (i.e., exertional limitations), the SSA can satisfy its burden through reference to the grids without considering direct evidence of the availability of jobs that the particular claimant can perform. We cautioned in Abbott, however, that where a claimant suffers from nonexertional limitations that significantly restrict the range of available work, "rote application of the grid is inappropriate." Abbott, 905 F.2d at 926. Noting that the grids take account of only exertional limitations (as contrasted with SSR 85-15, which accounts for only non exertional limitations), we held that an ALJ cannot rely on the grids alone in cases where the claimant's nonexertional limitation "significantly restrict[s] the range of available work." Id. at 926-27. In Damron, 778 F.2d at 281-82, we found that the ALJ, who had relied solely on the grids, "completely failed to consider the effect of nonexertional limitations upon [the claimant's] ability to find work in the national economy."

---

exertional limitations affect a person's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. 20 C.F.R § 404.1569a(c).

> Abbott and Damron reflect the general rule in this circuit that, where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. Burton v. Sec'y of Health & Human Servs., 893 F.2d 821, 822 (6th Cir.1990). "Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [her] exertional limitations." Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987).

The ALJ's reliance on the Grids was therefore appropriate only if his decision - that Card's nonexertional limitations do not significantly erode the occupational base of unskilled light work - was supported by some reliable evidence. See Jordan, 548 F.3d at 424; Shelman, 821 F.2d at 321.

Here, the ALJ initially found that Card's residual functional capacity would restrict her from workplaces with concentrated exposure to pulmonary irritants and temperature extremes, and also found that she should be limited to infrequent interaction with the general public and infrequent changes in a routine setting. This is inconsistent with the ALJ's later finding that "the additional limitations have little or no effect on the occupational base of unskilled light work." The ALJ's opinion does not articulate the basis for this conclusion. The ALJ discussed Card's testimony about her daily activities in the context of evaluating Card's credibility regarding her allegations of pain. However, the ALJ

did not explain how such testimony impacted his decision at Step Five. Furthermore, the ALJ noted that he gave significant weight to Dr. Beebe's evaluation regarding Card's mental limitations. The ALJ's decision does not meaningfully explain, with reliable evidence in support, why the limitations that Dr. Beebe noted do not significantly erode the occupational basis of unskilled light work. Nor did the ALJ cite to any other "reliable evidence" indicating why the above-described nonexertional limitations have little or no effect on the occupational base of unskilled light work. Furthermore, at least one of the jobs that the ALJ noted – assembler, production (R. 29) - appears to encompass "bench work" which potentially could be inappropriate given Card's environmental restrictions. As the Sixth Circuit has noted:

> [a]pproximately 85 percent of the 200 unskilled, sedentary occupations that exist throughout the national economy are in the machine trades and bench work categories." Warmoth [v. Bowen], 798 F.2d [1109,] 1112 [7th Cir. 1986], see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a). "Machine trades and bench work by their nature often involve exposure to dust, fumes, and other suspended particulates irritating or intolerable to persons afflicted with respiratory ailments." Thomas v. Schweiker, 666 F.2d 999, 1005 n.8 (5th Cir. 1982) (per curiam); see also Warmoth, 798 F.2d at 1112. The ALJ's finding that a significant number of unskilled, sedentary jobs would not be ruled out by plaintiff's nonexertional limitations, which was made without citation of any authoritative references or any other evidence, was clearly in error. Warmoth, 798 F.2d at 1112.

Shelman, 821 F.2d at 321-22. Here, as in Shelman, the ALJ did not cite to any other reliable evidence indicating why such work would

be appropriate given Card's environmental limitation.

The government's arguments in support of the Commissioner's decision likewise fail to establish that the ALJ's decision was supported by reliable evidence. First, the government's reliance on SSR 85-15 – which the ALJ did not specifically cite in reaching his conclusion – is misplaced. As Jordan explained, SSR 85-15 cannot apply to Card, "who suffers from both exertional and nonexertional limitations. Accordingly, it could not have constituted reliable evidence in support of the ALJ's finding." Jordan, 548, F.3d at 424. Second, 20 C.F.R. 404 Subpt. P, App. 2, 200.00(i) addresses "illiteracy or the inability to communicate in English," not the types of nonexertional limitations that the ALJ acknowledged Card suffered from. Thus, it likewise fails to constitute the requisite reliable evidence in support of the ALJ's finding. Accordingly, the ALJ's decision as to whether Card's nonexertional limitations significantly eroded the occupation basis of light unskilled work was not supported by substantial evidence. Reliance on the Grids was therefore inappropriate. The case will be remanded for further proceedings at Step Five.

**D. Whether the ALJ Erred by Relying on "Occubrowse" and the "SSA Digital Library"**

Card also argues that the ALJ erred by relying on the "Occubrowse" database from the "SSA Digital Library" to find three specific jobs that Card could perform. (ECF No. 11 at 12.) The

-13-

government asserts that the ALJ did not need to rely on Occubrowse, because he properly relied on the Grids. (ECF No. 12 at 8.) As explained above, reliance on the Grids was inappropriate, and the court has ordered that this case be remanded for further proceedings. Any argument relating to the Occubrowse database should therefore be addressed on remand.

### III. CONCLUSION

For the foregoing reasons, the ALJ's decision is reversed, and this case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 20, 2018
Date